**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CRYSTAL Y. POOLE** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:06cv712-HSO-JMR** |
| | § | |
| | § | |
| **COLONIAL LIFE & ACCIDENT** | § | |
| **INSURANCE COMPANY** | § | **DEFENDANT** |

**ORDER AND REASONS GRANTING DEFENDANT COLONIAL LIFE & ACCIDENT**
**INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is a Motion for Summary Judgment [27] pursuant to

FED. R. CIV. P. Rule 56, filed by Defendant Colonial Life & Accident Insurance

Company ("Colonial") in the above captioned cause on April 30, 2007.  Plaintiff filed

a Response [30] and Defendant filed a Rebuttal [32].

After consideration of the submissions and the relevant legal authorities and

for the reasons discussed below, the Court finds that the instant Motion must be

granted.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff obtained an insurance policy with Colonial through her employment

with the Harrison County School District ("Harrison County") in Gulfport,

Mississippi.  The effective date of the policy was October 1, 1998.  Each month,

Harrison County deducted premium payments in the amount of forty-six dollars

and fifteen cents from Plaintiff's salary, which were forwarded to Colonial.[1]

_____

[1]Plaintiff asserts that Harrison County payroll employees inadvertently
forwarded premiums to Colonial Life when they should have been forwarded to
American Fidelity Insurance Company.  The Court finds that this assertion has no

In the summer of 2002, Plaintiff alleges she became disabled and filed a claim for disability benefits with Colonial.[2]  The initial claim form contained a portion filled out by Plaintiff's treating physician, Dr. Blanche C.J. Havas, M.D. ("Dr. Havas"), which indicated Plaintiff's diagnosis/primary disabling condition as "Axis I:  A. Major Depression, Recurrent with Psychosis; B.  Alcohol Abuse; C. Relational Problems; D. Marijuana Abuse, In Remission."  *See* Claim Form at COL-049, attached as Ex. C to Def.'s Mot. for Summ. J.  On or about June 13, 2002, Colonial notified Plaintiff of policy exclusions disallowing benefits for "mental or nervous disorders or diseases" and for "participating in or attempting to participate in an illegal activity."  *See* June 13, 2002, Letter at COL-035, attached as Ex. "C" to Def.'s Mot. for Summ. J.; *see also* Insurance Policy at COL-014, attached as Ex. "C" to Def.'s Mot. for Summ. J.  Colonial also informed Plaintiff of its request to Dr. Havas for additional medical records.  *See id.*  Benefits were not denied to Plaintiff at this time.

On or about November 5, 2002, Colonial received a "Continuing Disability Claim Form," relating to Plaintiff's claim.  On this form, Dr. Havas indicated that

---

bearing to this lawsuit since Plaintiff's claims are solely against Colonial.

[2]Plaintiff maintains that she became disabled and filed a disability claim with Colonial on August 30, 2002.  *See* Pl.'s Compl. at ¶ 5; *see also* Pl.'s Resp. to Def.'s Mot. for Summ. J. at p. 1.  The record reflects that Colonial first received a claim for disability benefits from Plaintiff in June 2002, and a "Continuing Disability Claim Form" in November 2002.  *See* Claim Form at COL-050 and Continuing Disability Claim Form at COL-076, attached as Ex. "C" to Def.'s Mot. for Summ. J.

Plaintiff's primary disabling condition was "[h]er depression.  Psychosis S x S under control of meds."  *See* Continuing Disability Claim Form at COL-076, attached as Ex. "C" to Def.'s Mot. for Summ. J.  Dr. Havas further indicated that Plaintiff had no secondary conditions contributing to the disability.  *See id*.  In a letter dated November 14, 2002, Colonial denied Plaintiff's benefits based upon those exclusions stated in the June 13, 2002, letter.  *See* November 14, 2002, Letter at COL-040, attached as Ex. "C" to Def.'s Mot. for Summ. J.

In December of 2002, Colonial received additional medical records relevant to Plaintiff's claim.  *See* Plaintiff's Medical Records at COL-089-104, attached as Ex. "C" to Def.'s Mot. for Summ. J.  After review of these records, Colonial notified Plaintiff on or about December 31, 2002, that the records were duplicates of those previously received, and that it was therefore "unable to review for additional benefits."  *See* December 31, 2002, Letter at COL-042, attached as Ex. "C" to Def.'s Mot. for Summ. J.

Plaintiff next contacted Colonial on or about July 11, 2005, when her counsel made a general demand for the payment of disability benefits related to Plaintiff's initial claim.[3]  Colonial responded with two letters.  In its first letter, dated July 25, 2005, Colonial recounted the exclusions found in its June 13, 2002, and November 14, 2002, letters and advised that it was requesting additional medical records from

---

[3]  The letter from Plaintiff's counsel dated July 5, 2002, again references an alleged disability date of August 30, 2002.  *See* July 5, 2002, Letter from LaQuetta M. Golden at COL-106, attached as Ex. "C" to Def.'s Mot. for Summ. J.

Gulf Oaks Hospital.  *See* July 25, 2005, Letters to Plaintiff and Plaintiff's counsel at COL-043-44, attached as Ex. "C" to Def.'s Mot. for Summ. J.  The medical records received allegedly identified depression as Plaintiff's primary diagnosis, but also identified an inpatient stay for diabetic ketoacidosis from July 22, 2003, until July 27, 2003.  In its second letter, dated August 25, 2005, Colonial once again denied benefits since Plaintiff's depression fell under a policy exclusion, and since Plaintiff's inpatient stay for diabetic ketoacidosis was outside the applicable policy period.[4]  *See* August 25, 2005, Letters to Plaintiff and Plaintiff's counsel at COL-045-46, attached as Ex. "C" to Def.'s Mot. for Summ. J.

Plaintiff filed her Complaint against Colonial in the County Court of Harrison County, Mississippi, on or about March 23, 2006, alleging a breach of contract claim, as well as claims for fraud, deceit and misrepresentation.  Plaintiff's claims are premised upon Colonial's acceptance of premium payments from Plaintiff and subsequent refusal to afford disability benefits to her.  Plaintiff seeks actual, compensatory, and punitive damages.  Colonial removed the lawsuit to this Court

---

[4]In October of 2002, Plaintiff was no longer employed by the school district, but continued her policy coverage with Colonial by initiating an automatic bank draft on her personal banking account.  *See* Continued Coverage Election Documents at COL-022-23, attached as Ex. "C" to Def.'s Mot. for Summ. J.  On or about November 19, 2002, Plaintiff allegedly contacted Colonial and requested that the policy be canceled.  *See* Document at COL-273, attached as Ex. "C" to Def.'s Mot. for Summ. J.  Colonial alleges that this document is evidence of Plaintiff's policy cancellation request, however, the Court had difficulty reading the copy provided.  Colonial cancelled Plaintiff's policy in December of 2002 when it did not receive the required premium from Plaintiff.  *See* Colonial's Resp. to Pl.'s Interrogatories at no. 9, attached as Ex. "E" to Def's Mot. for Summ. J.

on the basis of diversity jurisdiction.

Defendant's Motion for Summary Judgment asserts that Plaintiff's claims must be dismissed since (1) they are barred by the three year statute of limitations contained in section 15-1-49 of the Mississippi Code; (2) there is no evidence that Colonial either breached its contract with Plaintiff, or that Colonial committed fraud or made misrepresentations to Plaintiff; and (3) the lapse of Plaintiff's policy on December 1, 2002, barred Plaintiff's recovery of benefits for any alleged disabilities occurring after that date.

## II. <u>DISCUSSION</u>

### A.    <u>Applicable Legal Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes of fact that might affect the outcome of the

lawsuit under the governing substantive law will preclude summary judgment.  *See id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Booth*, 75 F. Supp.2d at 543.   If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *See Booth,* 75 F. Supp.2d at 543.

Because this is a case of diversity jurisdiction, the Court must apply state substantive law.  *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.    <u>Breach of Contract Claim</u>

Mississippi applies a three-year statute of limitations period to claims for breach of written contract.  *See Bolden v. Brooks*, No. 04-60286, 2005 WL 1164197, at * 3 (May 18, 2005 5th Cir.); *see also* MISS. CODE ANN. § 15-1-49.  The limitations period on an action based upon an insurance company's refusal to pay benefits begins to run "when the insured *first* receives written notification that a specific claim was denied."  *Young v. Southern Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991)(emphasis added)*(quoting Loewer v. New York Life Ins. Co.*, 773 F. Supp. 1518, 1521-22 (M.D. Fla. 1991)).  As held by the court in *Young*,

> [w]hen parties are voluntarily acting pursuant to a contract, there is no cause of action upon that contract until a breach occurs.  In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running.

*Young*, 592 So. 2d at 107.

In this case, Plaintiff's limitations period on her breach of contract claim against Colonial began to run when she *first* received written notice of Colonial's denial of benefits relating to her summer of 2002 claim.  The record reflects that Colonial first sent written notification of its denial on November 14, 2002.  Plaintiff's Complaint was filed more than three years from the date of this denial, thereby barring Plaintiff's breach of contract claim.

Because the Court holds that Plaintiff's breach of contract claim is barred by

section 15-1-49 of the Mississippi Code, a detailed substantive analysis of the claim is moot.  Nevertheless, the Court finds that there is insufficient evidence in the record to support a claim of any breach by Colonial.  Mississippi law requires the following elements in a breach of contract action: (1) that there exists a valid and binding contract; (2) that the defendant has broken it, or breached it; and (3) that the plaintiff has been thereby damaged monetarily.  *See Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992).

The record reflects that Colonial's denial of benefits was premised on its application of policy exclusions to Plaintiff's medical diagnosis.  Such a denial of benefits comports with the law since "insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain...."  *Noxubee County Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004)(citing *United States Fidelity & Guar. Co. v. Knight*, 882 So. 2d 85, 92 (Miss. 2004)).

C.  Claims of Fraud, Deceit and Misrepresentation

Mississippi law imposes a three-year limitations period for actions based in fraud and misrepresentation.  *See Citifinancial Mortg. Co., Inc. v. Washington*, No. 2005-IA-00311-SCT, 2007 WL 3104990, at *3 (Miss. October 25, 2007); *Stephens v. Equitable Life Assur. Society of U.S.*, 850 So. 2d 78, 81 (Miss. 2003); *see also* MISS. CODE ANN. § 15-1-49.  "Courts applying Mississippi law have long held that the statute of limitations period for claims based on alleged misrepresentations begins

-8-

to run upon the completion of the sale induced by such false representation or upon the consummation of the fraud or misrepresentation." *Donald v. Pioneer Credit Co.*, 374 F. Supp. 2d 495, 497 (S.D. Miss. 2005)(citing *Black v. Carey Canada, Inc.*, 791 F. Supp. 1120, 1123 (S.D. Miss. 1990*); Stephens*, 850 So. 2d at 82-83; *American Bankers' Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1200-03 (Miss. 2001); *Dunn v. Dent*, 153 So. 798, 798-99 (Miss. 1934)).

The appropriate inquiry for determining the commencement of the limitations period centers on whether the alleged tortious conduct occurs at the formation of the insurance agreement or at a later time. *See Agnew v. Washington Mutual Finance Group*, 244 F. Supp. 2d 672, 676 (N.D. Miss. 2003). Where the alleged misconduct occurs during contract formation, the limitations period begins to run upon the purchase of the policy. *See id.* (holding the limitations period on plaintiffs' allegations of false misrepresentations inducing plaintiffs to purchase credit insurance began to run on the dates the various insurance agreements were signed); *see also Stephens*, 850 So. 2d at 82-83. Where the alleged tortious misconduct occurs after contract formation, the limitations period begins to run when the plaintiff receives reasonable notice of the misconduct. *See Agnew*, 244 F. Supp. 2d at 676 (citing *American Bankers'*, 819 So. 2d at 1202)(holding that the plaintiff's claim against an insurer for improperly backdating an insurance policy began to run when the plaintiff had received reasonable notice of the backdating

and force-placement).[5]

     In the instant case, Plaintiff alleges in her Complaint that

> Defendant engaged in unfair dealing with [sic] it accepted her money, but refused to pay her any disability insurance.... The acts of accepting money and refusing to pay Plaintiff's claim indicate that the Defendant should be liable for fraud, deceit and misrepresentation.

Pl.'s Compl. at ¶ 9.

     The Complaint supplies little guidance as to the timing of Colonial's alleged fraud, deceit, or misrepresentation.  Notwithstanding the foregoing, it remains clear that the limitations period has run on these claims.

     To the extent Plaintiff alleges that she was fraudulently induced to enter into

---

[5]Plaintiff relies on *Bullard v. The Guardian Life Ins. Co. of America*, 941 So. 2d 812 (Miss. 2006), for the proposition that the statute of limitations on her cause of action did not accrue until she was or should have been aware of the alleged fraud.  *See id.* at 815.  Plaintiff asserts that under *Bullard*, her limitations period began to run on August 25, 2005, when she received her final denial letter from Colonial.  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at p. 3.

     The Court finds *Bullard* to be factually dissimilar to the instant case, and therefore inapplicable to the legal analysis.  In *Bullard*, the plaintiff was an insurance agent who had been sued by insureds claiming that he and the insurance company had fraudulently misrepresented the number and amount of premiums the insureds needed to pay to keep the policy in force.  The policy was sold in 1990, but the agent was not sued until 2000.  The court stated that the limitations period did not begin to run upon the purchase of the policy since it "would require [the agent] to presage that the [insureds] would file suit against him and cause him damage.  Such a claim for prospective or possible damages is not recognized by this state."  *Bullard*, 941 So. 2d at 815.  This statement alone sets *Bullard* apart from the many cases brought against insurance companies by insureds, such as the instant case.  Even under *Bullard*, the Court does not find that Colonial's final denial letter in 2005 would start the limitations period on Plaintiff's claims, but instead believes Plaintiff would have been aware, or should have been aware, of the alleged fraud through Colonial's November 14, 2002, letter denying benefits.  This is especially true since the plaintiff in *Bullard* asserted that his cause of action accrued when he *first* learned of the alleged fraud.  *See id.* at 814.

-10-

the insurance contract, the applicable statute of limitations lapsed in 2001, three years after Plaintiff's purchase of the Colonial policy.  To the extent Plaintiff alleges misconduct on behalf of Colonial after contract formation, the applicable statute of limitations lapsed in November of 2005, three years after Colonial's November 14, 2002, letter denying benefits.

Plaintiff asserts that the statute of limitations was tolled by "Defendant's fraudulent concealment of the fact that [it] did not offer disability insurance, yet accepted Plaintiff's premiums for such...[and since] Defendant denied coverage stating Plaintiff's policy had lapsed."  Pl.'s Resp. to Def.'s Mot. for Summ. J. at p. 6. Under Mississippi law, the statute of limitations is tolled where a claim of fraudulent concealment can be proved.  *See Stephens*, 850 So. 2d at 83 (citing *Myers v. Guardian Life Ins. Co. of America, Inc.*, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)); *see also* MISS. CODE ANN. § 15-1-67.  In order to establish fraudulent concealment, Plaintiff must show that Colonial "engaged in affirmative acts of concealment" and that "even though [she] acted with due diligence in attempting to discover [her] cause of action, [she was] unable to do so."  *Frye v. Southern Farm Bureau Cas. Ins. Co.*, 915 So. 2d 486, 492 (Miss. Ct. App. 2005).

After a thorough review of the record, it is the Court's opinion that Plaintiff has not offered sufficient evidence to carry her burden of establishing fraudulent concealment by Colonial.  There is no evidence in the record demonstrating that Colonial "engaged in affirmative acts of concealment."  *Stephens*, 850 So. 2d at 83

(quoting *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1030 (N.D. Miss. 1993)). In fact, the evidence shows that Colonial's policy *did* offer disability insurance and that the policy at issue lapsed in December of 2002. *See* Policy Schedule at COL-009, attached as Ex. "C" to Def.'s Mot. for Summ. J. (providing a disability benefit for total disability (accident) or total disability (sickness) of $1,000.00 per month for twelve months); *see also* Memorandum from Asst. Superintendent Mitchell King at HCSD-016, attached as Ex. "F" to Def.'s Mot. for Summ. J. (acknowledging that Plaintiff's assertion that Colonial did not carry disability insurance as "untrue"); *see also* Colonial's Resp. to Pl.'s Interrogatories at no. 9, attached as Ex. "E" to Def's Mot. for Summ. J. (stating Plaintiff's policy lapsed on December 1, 2002, when the required premium was not received to keep the policy in effect). Without evidence to the contrary, Plaintiff offers mere conclusory allegations and does not satisfy her initial burden in sustaining a fraudulent concealment claim.

Further, this is not a case where, through reasonable diligence, Plaintiff could not have discovered Colonial's alleged misconduct. Plaintiff has not denied receiving the policy. Plaintiff does not allege that the policy is ambiguous as to its exclusions or payment terms. The policy states as follows:

> WHAT IS NOT COVERED BY THIS POLICY

> We will not pay benefits for an injury or a sickness which is caused by or occurs as the result of:
>        ***

Illegal Activities Suicide or Injuries Which You
Intentionally do to Yourself

· Your participating or attempting to participate in an illegal activity.

***

We will not pay benefits for an injury which is
caused by or occurs as the result of:

Sickness

· Your having any sickness or declining
process caused by a sickness, including
physical or mental infirmity. We also will
not pay benefits to diagnose or treat the
sickness.

Sickness means any illness,
infection, disease or any other
abnormal physical condition
which is not caused solely by or
the result of an injury.


YOUR PREMIUM PAYMENTS

When to Pay Premiums

The premiums for this policy must be paid to us at our home
office in advance and when they are due.
If you do not pay the premiums when they are due or within
the grace period, this policy will terminate. The dates the
premium is due are based on:

· the effective date of this policy shown in the Policy
Schedule and

· the premium frequency.

The *premium frequency* is how often you pay the premiums.

If Premiums Are Not Paid When Due

-13-

> After the first premium, if you do not pay a premium when it
> is due, you can pay it during the next thirty-one days. These
> thirty-one days are called the *grace period*. During this period
> this policy will stay in force. If the premium is not paid before
> the grace period ends, it will terminate as of the date of the
> premium was due.

Insurance Policy at COL-010 and COL-014, attached as Ex. "C" to Def.'s Mot. for
Summ. J.

"A party has a duty to read an insurance contract and knowledge of the
contract's terms will be imputed to the party even if she does not read it." *Frye*, 915
So. 2d at 492. This is also true with regard to assertions of fraudulent concealment.
*See id.* The record does not reflect that Plaintiff exercised due diligence to discover
the factual basis of her claims. *See Andrus v. Ellis*, 887 So. 2d 175, 181 (Miss.
2004). Because the Court finds that Plaintiff has not sustained her burdens under
her fraudulent concealment assertion, the Court will not toll the statute of
limitations.

Lastly, *even if* the limitations period were tolled, the Court is of the opinion
that Plaintiff's claims are insufficient to survive summary judgment. The following
elements must be proved by clear and convincing evidence in order to sustain a
claim of fraud:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's
> knowledge of its falsity or ignorance of its truth, (5) his intent that it
> should be acted upon by the person and in the manner reasonably
> contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance
> on its truth, (8) his right to rely thereon, and (9) his consequent and
> proximate injury.

*Sistrunk v. Cuna Mut. Ins. Soc.*, 733 F. Supp. 1080, 1083 (S.D. Miss. 1989)(quoting

-14-

*Watson v. First Commonwealth Life Ins. Co.*, 686 F. Supp. 153, 155 (S.D.Miss.1988) (quoting *Martin v. Winfield*, 455 So.2d 762, 764 (Miss.1984))).

Upon review of the record and submissions of the parties, Plaintiff has merely made conclusory assertions regarding her claims of fraud, deceit and misrepresentation, and has not provided the Court with sufficient summary judgment evidence supporting these allegations.  With regard to summary judgment, the Fifth Circuit has stated that

> [t]his burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis in original); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)(resolving actual disputes of material facts in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint....").

In summation, the instant case must be dismissed since Plaintiff's claims for breach of contract, fraud, deceit and misrepresentation are barred by the three-year statute of limitations found under section 15-1-49 of the Mississippi Code, and since the record contains insufficient evidence, beyond conclusory allegations, to support any misconduct by Colonial.

## III.  <u>CONCLUSION</u>

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there are no disputes of material fact with respect to her claims for breach of

contract, fraud, deceit, and misrepresentation, and that Defendant is entitled to judgment as a matter of law.  For the reasons stated more fully herein, Defendant's Motion must be granted.

      **IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [27] of Defendant Colonial Life & Accident Insurance Company for Summary Judgment, filed on April 30, 2007, pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED**, and this Civil Action is hereby dismissed, with prejudice.

      **SO ORDERED AND ADJUDGED**, this the 3rd day of December, 2007.


                                    *s/ Halil Suleyman Ozerden*
                                     HALIL SULEYMAN OZERDEN
                                     UNITED STATES DISTRICT JUDGE